UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

SHARON D. CROWDER, )
    Plaintiff(s); )
     )
-vs.- )   No. CV-95-P-1940-W
     )
THE CITY OF NORTHPORT POLICE )
DEPARTMENT, CITY OF )
NORTHPORT, ALABAMA and CHIEF )
OF POLICE, J. DEMPSEY MARCUM, )
    Defendant(s). )

**ENTERED**
**MAY 19 1997**

## OPINION

The defendants, The City of Northport ("City") and J. Dempsey Marcum ("Marcum"), filed a Motion for Summary Judgment that was considered at a prior motion docket. For the following reasons, this motion is due to be GRANTED.

### Facts[1]

In 1977, the plaintiff, Sharon Crowder ("Crowder"), began working for the City as a school crossing guard. Over the course of the next several years, Crowder was hired as a radio dispatcher and then a patrol officer.[2] In April, 1987, Crowder was promoted to sergeant. In this position, she was assigned to crime prevention and public relations. No male or female employee had ever been assigned to these duties permanently. Marcum had recently decided that there was

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

2. In 1979, Crowder filed an EEOC charge claiming that the failure to hire her as soon as she was certified and a layoff that occurred while she was a radio dispatcher were discriminatory actions. However, Crowder withdrew the complaint after she was hired as a patrol officer in 1981. Defendant Marcum was not the police chief during this time period.

a need for such a permanent position. Crowder was also assigned to supervise the radio dispatchers, most of whom were female. She was also initially doing routine patrol work. Crowder requested that she be relieved of the patrol work so that she could concentrate on her sergeant's duties. Marcum granted that request. While Crowder was sergeant, Marcum instituted a policy that required a female officer to be on duty during each shift whenever possible. Crowder was often required to work the night shift as a result of this policy. In August 1992, Crowder and another officer, Don Richardson, the two most senior officers who passed the examination for lieutenant, were the only sergeants promoted to lieutenant.

After her promotion, Crowder was assigned to work as a juvenile investigator in a "metro" unit. While assigned to the juvenile division, Crowder held no supervisory authority. She reported to a deputy sheriff. Crowder's previous duties of crime prevention and dispatch were assigned to officers Terry Carroll and Kevin Leib, both male officers. Richardson was also assigned to a "metro" unit.

As a result of a City Council decision to reorganize the police department, in July 1993, Crowder and Richardson were promoted from lieutenant to first lieutenant, and Sergeants Bolton, Pennington, and Crowell were promoted from sergeant to second lieutenant. Under the reorganization, the first lieutenants would serve as division commanders and the second lieutenants would serve as shift commanders. The two divisions to be commanded by the two first lieutenants were Operations and Administration. Marcum made the assignments for the first lieutenants to the divisions, and tried each lieutenant in each position. Crowder was initially assigned to command the Operations division. The position she had occupied in the juvenile division was filled by an officer of no rank and only two years of experience in the police department.

2

After her transfer, Crowder was told that she should not fill out her own payroll sheets, although male officers were allowed to fill out their own payroll sheets. Crowder was placed in an office in which she had no computer. As well, she had no privacy because everyone in the division had access to her office.

In response to a notice that Crowder was calling a meeting of the shift supervisors, Marcum asked her about the meeting, asked her whether she was wearing a tape recorder, and told her the meeting was canceled and that she should call no further meetings without first submitting an agenda. That day, Crowder submitted an agenda, and Marcum then issued a memo canceling Crowder's meeting. In December 1993, Assistant Chief Billy Galloway refused to allow Crowder to participate in an internal investigation handled by one of her subordinates. On January 11, 1994, Marcum issued a memo requiring first lieutenants to fill in for the second lieutenants under his or her command. Crowder was the only first lieutenant affected because Richardson had no second lieutenants under his command. This policy required Crowder to change shifts frequently.

On January 25, 1994 Crowder filed her EEOC charge. Marcum returned Crowder's January monthly report and asked her to redo it. On March 8, 1994, Crowder was given a poor performance evaluation. On March 24, 1994, Crowder forwarded a notice to Galloway regarding possible infractions by officers under her command. Later that day, Galloway sent out a notice that metro unit investigators would no longer be in the command of the lieutenant in charge of Operations. In late March, Crowder was denied access to payroll sheets of personnel under her command. Richardson had access to these documents. On April 19, 1994 Crowder was reassigned to the midnight shift. In June, 1994, Crowder was directed to learn the duties of the records clerk, so that she could personally train a new clerk/typist. Her subordinates were not

3

asked to perform this task. In October, 1994 Crowder was reassigned to Administration Division Commander. One month after her move, a surveillance camera was found in the air conditioning vent of the office she formerly occupied.

Crowder filed this lawsuit on June 26, 1995. On October 1, 1995, Crowder was again assigned to Operations. In December, 1995, Marcum instructed that the investigations division would report to him. In January, 1996, Crowder was again reassigned to Administration. In February, 1996, Richardson was allowed to investigate a complaint filed on an investigator despite Marcum's policy that all investigators should report directly to him.

In her complaint, Crowder alleges that the defendants discriminated against her with regard to her job duties and responsibilities in violation of Title VII and § 1983 and subjected her to retaliatory harassment and a hostile environment.

## Analysis

The gist of Crowder's claim is that she was given less supervisory responsibility than similarly situated employees and was subjected to a hostile environment because of her sex. To state a prima facie case of disparate treatment under Title VII and § 1983,[3] the plaintiff must show that her employer treated other employees more favorably than her due to her sex. *International Brotherhood of Teamsters v. Unites States*, 431 U.S. 324, 335 n.15 (1977). The employer then bears the burden of articulating a legitimate non-discriminatory reason for its actions. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 593 (11th Cir. 1987). If the employer meets this burden, the plaintiff must then show that the employer's stated reason a is pretext for discrimination.

---

3. The nature of the prima facie case and the allocation of the burdens of the parties is the same in Title VII and § 1983 actions. *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991).

*Jones v. Gerwins*, 874 F.2d 1534, 1538 (11th Cir. 1989). To establish a prima facie case of a sexually hostile environment, a plaintiff must show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

With regard to her claim that she was discriminated against in her job duties, Crowder has not stated a prima facie case of discrimination. Although at some times during her employment Crowder was not given supervisory authority, she has not demonstrated that any similarly situated man was given such authority. In addition, Marcum and the City have articulated legitimate, non-discriminatory reasons for her placement. With regard to her claim of a hostile environment based on sex, Crowder has not demonstrated that she was subjected to intimidation, insult and ridicule so severe as to alter the terms and conditions of her employment. Therefore, Marcum and the City are due to be granted summary judgment.

Dated: ~~April~~ May /9, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Gregory Wiggins
    Mr. Kyle T. Smith
    Mr. Ronald L. Davis
    Ms. Lyn H. Durham